Rebecca JONES, Respondent,

v.

Cathy JONES, Appellant.

No. SD 29176.

Missouri Court of Appeals,
Southern District,
Division One.

April 14, 2009.

Motion for Rehearing or Transfer
Denied April 30, 2009.

David B. Pointer and Raymond M. Gross, Gainesville, for Appellant.

No brief filed for Respondent.

ROBERT S. BARNEY, Judge.

Cathy Jones ("Appellant") appeals the trial court's judgment relating to the "First Amended Petition for Declaratory Judgment" filed by Rebecca Jones ("Respondent") which determined the parties' status in the Amonsoquath Tribe of the Cherokee Nation, a not-for-profit Missouri

corporation ("the Corporation").[1] In its judgment, the trial court found Respondent was "entitled to occupy the position of, and is hereby declared to be the Chief, President and Chairman of [the Corporation];" that Appellant "holds no office, position or title in [the Corporation];" that "any and all acts done or purported to have been done by [Appellant] since on or about February 12, 2000, in any capacity purporting to represent the [Corporation] are void and of no effect;" and taxed costs against Appellant. Appellant asserts three points relied on. Point I is dispositive and the remaining points will not be reviewed.

The record reveals the Corporation was formed in 1993 for the purpose of gathering together individuals of a certain Native American heritage such that their lineage could be documented and federal recognition for the tribe could be attained. Appellant was involved with the Corporation at the time it was organized and was elected to its Board of Directors in 1999 where she served over the years as "the acknowledgment officer," as Deputy–Chief or Vice–President, as secretary of the Corporation, and as President and Chairman of the Board of the Corporation. Likewise, Respondent was involved with the Corporation as a member of the Board of Directors as well as a council member and she was elected to the position of Chief pro tem on October 27, 2001.

In late 1999, a dispute arose within the Corporation and the Corporation split into two disparate groups.[2] Appellant and Respondent were on separate sides of this disagreement. Due to the fracture within the leadership of the Corporation, a disagreement arose regarding the Corporation's bank account. This issue was litigated in an interpleader action filed by Southern Missouri Bank & Trust Company ("the Bank") and it was determined on May 15, 2001, that the funds in the Corporation's bank account belonged to Appellant as acting President or Chief pro tem of the Corporation.[3] Between the time the problems in the Corporation arose in 1999 and even after the period of the bank account litigation, the two separate factions within the Corporation were operating separate offices, keeping separate records, and maintaining separate enrollment lists.

On July 29, 2003, Respondent filed her "First Amended Petition for Declaratory Judgment" against Appellant. In the petition, Respondent stated "she is the duly elected/appointed Chief pro tem of the [Corporation]" in that she was elected to the position of Chief pro tem on October 27, 2001, by the Board of Directors; that Appellant "is representing herself to be the President and Chairman of the Board

1. We note Respondent did not file a brief in this matter.

2. At trial, Appellant testified the dispute was based on the alleged misappropriation of Corporation funds by the individual acting as Chief or President at that time. On the other hand, Respondent testified the dispute originated from Appellant's desire to open a second tribal office away from tribal land. She related this request was denied by the Board of Directors and the council; however, Appellant opened the office anyway.

3. At this time, Appellant was technically Deputy Chief of the Corporation which meant she was "second in command," but the Chief or President of the Corporation, Martin Wilson ("Mr. Wilson"), was incarcerated in federal prison at that time. In addition to finding the checking account belonged to Appellant due to her position as acting President, the trial court found that Mr. Wilson had been removed by the Corporation leadership as Chairman of the Corporation on November 13, 1999, and that Appellant "is the President and Chairman of the Board of the [Corporation]."

of the [Corporation];" that Appellant had been removed "from any and all positions" within the Corporation by resolution on May 13, 2000, such that she "ha[d] no authority" after February 12, 2000, to engage in any act on behalf of the Corporation; and that Mr. Wilson remained the President and Chief of the Corporation under the bylaws of the Corporation despite his incarceration. Respondent asserted "a controversy exists between the parties concerning who is lawfully entitled to occupy the position of Chief/President/Chairman of the [Corporation] and to act in said capacity on behalf of and for the benefit of the [Corporation]." She stated "that by virtue of her appointment by the board of directors of the [Corporation] as Chief pro tem on or about [2]7th day of October, 2001, she is entitled to occupy said positions...." She also stated Appellant "contends that she is entitled to occupy said positions and to so act by virtue of the purported acts of the [B]oard of [D]irectors and members of the [Corporation]." Accordingly, she requested "[b]y reason of the forgoing, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations and authority to lead, govern, and act on behalf of and for the benefit of the [Corporation]."

A trial was held on this matter on October 17, 2006, and August 17, 2007. After considering all the evidence, the trial court found on June 2, 2008, that the allegations in Respondent's petition "are true and that [Respondent] is entitled to the relief sought." In its Amended Judgment, the trial court found Respondent "is entitled to occupy the position of, and is hereby declared to be the Chief, President and Chairman of the [Corporation]" and that Appellant "holds no office, position or title in the [Corporation]...." The trial court also found that "any and all acts done or purported to have been done by [Appellant], since on or about February 12, 2000, in any capacity purporting to represent the [Corporation] are void and of no effect." Appellant was then instructed to turn over to Respondent all records relating to the Corporation which were in her possession. The trial court also assessed costs to Appellant and held that each party should pay their own attorney fees. This appeal followed.

When reviewing a declaratory judgment, the standard of review is the same as other court-tried cases. *Lakin v. Gen. Am. Mut. Holding Co.*, 55 S.W.3d 499, 502 (Mo.App.2001); *see also* Rule 84.13(d).[4] "As such, the trial court's decision will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id.* at 503. "However, review of legal determinations is de novo." *Id.*

In her first point relied on, Appellant asserts the trial court erred in "rendering judgment, because it lacked jurisdiction in that necessary and indispensable parties were absent from the action."[5]

Section 527.110 states that "[w]hen declaratory relief is sought, all

---

4. All rule references are to Missouri Court Rules (2007).

5. We note Appellant's point relied on fails to comply with Rule 84.04(d)(1). Rule 84.04(d)(1) specifically states that a proper point relied on shall

    (A) identify the trial court ruling or action that the appellant challenges;

(B) state concisely the legal reasons for the appellant's claim of reversible error; and
(C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.
The point shall be in substantially the following form: 'The trial court erred in [identify the challenged ruling or action], because [state the legal reasons for the claim

persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings."[6] " 'In determining which parties are required to be before the court, consideration is given to the nature of relief requested and the interests to be adjudicated.' " *Dolphin Capital Corp. v. Schroeder*, 247 S.W.3d 93, 97 (Mo.App. 2008) (quoting *Nachbar v. Duncan*, 114 S.W.3d 421, 424 (Mo.App.2003)). "It has been determined that an 'interest' which compels joinder is not one which is merely consequential, remote or a conjectural possibility of being somehow affected by the result of an action." *Moschenross v. St. Louis County*, 188 S.W.3d 13, 25 (Mo.App. 2006). "The interest at issue must be a direct claim upon the subject of the action such that the joined party will either gain or lose by direct operation of the judgment rendered." *Id.*

In determining if parties should be joined to a lawsuit, we first examine whether they are necessary and/or indispensable parties under Rule 52.04. " 'A necessary [party] is one who is so vitally interested in the subject matter of controversy that a valid judgment cannot be effectively rendered without the party's presence.' " *Jackson v. City of Cassville*, 234 S.W.3d 627, 631 (Mo.App.2007) (quoting *Mo. Nat'l Educ. Ass'n v. Mo. State Bd. of Educ.*, 34 S.W.3d 266, 277 (Mo.App. 2000)); *see* Rule 52.04(a).[7] "The absence of a necessary party is not fatal to jurisdiction." *Edmunds v. Sigma Chapter of Alpha Kappa*, 87 S.W.3d 21, 27 (Mo.App. 2002). If joinder of such a necessary party is not feasible, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it or should be dismissed, the absent party being thus regarded as indispensable." Rule 52.04(b).[8]

of reversible error], in that [explain why the legal reasons, in the context of the case, support the claim of reversible error].'
Appellant's point relied on contains none of the aforementioned requirements and is merely an abstract statement of law. "A point relied on which does not state why the legal reasons support the claim of reversible error, but instead sets out an abstract statement of law, is deficient and preserves nothing for appeal." *Crawford Cty. Concerned Citizens v. Mo. Dept. of Natural Resources*, 51 S.W.3d 904, 908 (Mo.App.2001); *see also Faith Baptist Church of Berkeley, Inc. v. Heffner*, 956 S.W.2d 425, 426 (Mo.App.1997). "Notwithstanding noncompliance with Rule 84.04, appellate courts may exercise discretion and attempt to resolve issues on their merits unless the defective point impedes disposition of the case on its merits." *Atkins v. McPhetridge*, 213 S.W.3d 116, 120 (Mo.App. 2006). In that this Court can discern Appellant's complaints from the argument portion of this point relied on, we shall address the issue raised.

6. Likewise, Rule 87.04 states that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any inter-

est which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings."
All statutory references are to RSMo 2000.

7. Pursuant to Rule 52.04(a), a person may be considered a necessary party if
(1) in the person's absence complete relief cannot be afforded or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been joined, the court shall order that the person be made a party.

8. The factors to be considered by the trial court in determining whether a party is indispensable include:
(i) to what extent a judgment rendered in the person's absence might be prejudicial to

"A party must first be found necessary to a lawsuit before we consider whether that party is indispensable." *Heitz v. Kunkel,* 879 S.W.2d 770, 771 (Mo.App.1994). The "failure to join an indispensable party is so fundamental and jurisdictional that we must consider it even if none of the parties raises the issue." [9] *Id.* at 772. "[W]hen an indispensable party to a declaratory judgment action is not joined in the case, any judgment rendered in that party's absence is a nullity." *Automobile Club Inter–Insurance Exchange v. Nygren,* 975 S.W.2d 235, 239 (Mo.App.1998).

▪ Here, the Corporation is a necessary party to this action under Rule 52.04(a). It is clear under the facts of this case that the Corporation "claims an interest relating to the subject of the action" in that the judgment determines the identity of its directors and officers and the judgment has the possibility of affecting the Corporation's dealings with third parties. Rule 52.04(a)(2). The Corporation's interests are greatly impaired from its absence from this lawsuit. Further, this Court finds the Corporation and its address were known to Respondent such that there is nothing in the record to indicate that it would not have been feasible to join the Corporation. *Lake Sherwood Estates v. Cont'l Bank,* 677 S.W.2d 372, 375 (Mo.App. 1984). "If a person is found to be a necessary party under 52.04(a) and it is feasible to join him, then, of course, he must be

joined." *Kingsley v. Burack,* 536 S.W.2d 7, 13 (Mo. banc 1976).

▪ Having found the Corporation was a necessary party to this lawsuit, we now turn to the issue of whether the Corporation was also an indispensable party. *See Heitz,* 879 S.W.2d at 772. Here, it is clear the Corporation was an indispensable party to this lawsuit such that in equity and good conscience this action should not have been allowed to proceed without it being a party. Rule 52.04(b). The remedies requested by Respondent in her petition and the relief afforded to her by the trial court all require some action by the Corporation or directly impact the Corporation. Respondent specifically asked the trial court to determine "who is lawfully entitled to occupy the position of Chief/President/Chairman of the [Corporation] and to act in said capacity on behalf of and for the benefit of the [Corporation]." The trial court then found Respondent was to occupy the aforementioned roles within the Corporation and determined that actions taken by Appellant on behalf of the Corporation after "February 12, 2000, *in any capacity purporting to represent the [Corporation] are void and of no effect.*" (Emphasis added). Such a ruling clearly impacts the Corporation and its dealings with third parties such that it would prejudice the Corporation and possibly open it up to litigation from third parties who engaged in business with Appellant after February

that person or those already parties; (ii) the extent to which by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (iii) whether a judgment rendered in the person's absence will be adequate; and (iv) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
Rule 52.04(b).

9. Appellant did not raise this necessary and indispensable argument before the trial court;

however, based on Rule 55.27(g)(2) such issues can be raised for the first time on appeal. Rule 55.27(g)(2) states that "a defense of failure to join a party indispensable under Rule 52.04 ... may be made in any pleading permitted or ordered under Rule 55.01, or by motion for judgment on the pleadings, or at the trial on the merits, or on appeal." *See Kelsey v. Nathey,* 869 S.W.2d 213, 215 (Mo. App.1993); *Obaidullah v. Kabir,* 882 S.W.2d 229, 230 (Mo.App.1994).

12, 2000, when Appellant was acting as agent for the Corporation. The issues raised in Respondent's petition and ruled upon in the trial court's judgment clearly impede the interests of the Corporation and prejudice it in its absence from this litigation. Under Rule 52.04(b), the fact that this action was allowed to proceed in the Corporation's absence affected its ability to protect its interest therein and was prejudicial. *See Automobile Club Inter–Insurance Exchange,* 975 S.W.2d at 239. The Corporation was an indispensable party to this action. Accordingly, the trial court's judgment in the present matter is void, because the Corporation, a necessary and indispensable party, was not joined in the lawsuit below. *Id.* Point I has merit.

The judgment of the trial court is reversed.

BATES, J., and SCOTT, P.J., concur.